**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KRYSTAL L. BOXUM-DEBOLT, et al., )
)
           Plaintiffs, )
) **CIVIL ACTION**
v. )
) **No. 12-2641-KHV**
OFFICE OF THE DISTRICT ATTORNEY, )
3RD JUDICIAL DISTRICT OF KANSAS )
(SHAWNEE COUNTY DISTRICT )
ATTORNEY'S OFFICE), et al., )
)
           Defendants. )
)

**MEMORANDUM AND ORDER**

Krystal L. Boxum-Debolt and Lisa Anne Moore bring suit against the Office of the District Attorney, 3rd Judicial District of Kansas ("DA's Office"); Chadwick J. Taylor, District Attorney for the 3rd Judicial District of the State of Kansas, in his official and individual capacities; Shawnee County, Kansas; and Shawnee County Board of Commissioners Ted Ensley, Mary M. Thomas and Shelly Buhler, in their official and individual capacities. See Complaint (Doc. #1) filed October 1, 2012. Under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., plaintiffs assert claims for gender discrimination (Count I), associational discrimination (Count II) and retaliation (Count III). Under 42 U.S.C. §§ 1983 and 1985, plaintiffs claim that defendants violated their constitutional rights to substantive and procedural due process, freedom of speech and equal protection (Count IV) and conspired to violate those rights (Count V). Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., plaintiffs claim that defendants willfully denied overtime wages (Count VI). This matter comes before the Court on the Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) filed November 13, 2012 and the Motion To

Dismiss Of Defendants, Shawnee County, Kansas And Shawnee County Board Of Commissioners, Ted Ensley, Mary M. Thomas And Shelly Buhler (Doc. #13) filed November 27, 2012. For reasons stated below, the Court sustains the motions in part.

**I.     Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party to determine whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Brown v. Montoya, 662 F.3d 1152, 1162 (10th Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiffs bear the burden of framing their complaint with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual

enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleaders are entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

**II.    Facts**[1]

Plaintiffs allege the following facts:

The DA's Office is a separate, subordinate agency of the State of Kansas. Complaint (Doc. #1) ¶ 4. At all relevant times, Taylor was the District Attorney for Shawnee County. Id. ¶ 5.

Shawnee County is a county of the State of Kansas, created, organized, existing and operating pursuant to the laws of Kansas. Id. ¶ 6. At all relevant times, Ensley, Thomas and Buhler were members of the Board of County Commissioners and/or individual county commissioners of Shawnee County. Id. ¶ 7.

Plaintiffs are Caucasian females. Id. ¶ 15. At all relevant times, defendants jointly and/or individually employed plaintiffs as victim/witness specialists. Id. ¶¶ 1-2. During their employment, plaintiffs performed all duties as required and exceeded the expectations of their positions. Id. Plaintiffs routinely worked more than 40 hours per week without overtime compensation. Id. ¶ 18.

In the spring of 2010, plaintiffs reported gender discrimination and other unethical and illegal

---

[1]     In ruling on defendants' motions to dismiss, the Court does not consider matters presented outside the pleadings or arguments raised for the first time in defendants' reply brief.

conduct, including that defendants were discriminating against female employees by not providing an appropriate location to breast feed or pump. Id. ¶ 23. In response, defendants ridiculed plaintiffs and said that Moore must not have enough work to do. Id. ¶ 24.

In the middle of July 2010, plaintiffs reported serious violations of law and public policy, including the improper conduct of their supervisor. Id. ¶ 25. Specifically, plaintiffs reported that their supervisor improperly used her position to coerce a Hispanic employee, her family and the widow of a Hispanic murder victim to clean her home. Id. ¶ 26. Plaintiffs spoke truthfully about matters of public concern and reported illegal acts involving defendants' managers and officials. Id. ¶ 28.

In response to the complaints, defendants retaliated against plaintiffs with regard to the terms and conditions of their employment. Id. ¶ 27. Almost immediately, defendants suspended plaintiffs' employment. Id. ¶ 29. As of August 2, 2010, defendants terminated plaintiffs' employment. Id.

**III.    Analysis**

As noted, under Title VII, plaintiffs assert claims of gender discrimination (Count I), associational discrimination (Count II) and retaliation (Count III). Under 42 U.S.C. §§ 1983 and 1985, plaintiffs claim that defendants violated their constitutional rights to substantive and procedural due process, freedom of speech and equal protection (Count IV) and conspired to violate those rights (Count V). Under the FLSA, plaintiffs claim that defendants willfully denied them overtime wages (Count VI). Although defendants' motions do not delineate plaintiffs' claims, it appears that they seek dismissal of all claims.

    **A.    Motion To Dismiss By Taylor And The DA's Office**

Taylor and the DA's Office seek dismissal of plaintiffs' claims on grounds that (1) plaintiffs

do not constitute "employees" under Title VII and the FLSA; (2) the DA's Office is not a legal entity subject to suit; (3) the Eleventh Amendment bars claims against Taylor in his official capacity; (4) plaintiffs do not state claims for violation of First Amendment and Title VII rights; (5) Taylor is entitled to qualified immunity on constitutional claims against him individually; (6) plaintiffs do not have standing to assert grievances of third parties; and (7) plaintiffs do not state a claim for unlawful conspiracy.

### 1. Whether Plaintiffs Constitute "Employees" Under Title VII And The FLSA (Counts I, II, III And VI)

Taylor and the DA's Office assert that plaintiffs were members of Taylor's personal staff and therefore do not fall under the definition of "employee" under Tile VII and the FLSA. Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 4-6 (citing 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(e)(2)(C)).[2] The Tenth Circuit has found that the definition of

---

[2] Title VII defines "employee" as follows:

The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. * * *

42 U.S.C. § 2000e(f) (emphasis added).

With respect to individuals employed by a public agency, the FLSA provides that the term "employee" includes the following:

(C) any individual employed by a State, political subdivision of a State, or an interstate governmental agency, *other than such an individual* –
   (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and

(continued...)

"employee" under the FLSA is "essentially identical" to that under Title VII, and that the legislative history and case law regarding the personal staff exception under Title VII offers guidance for interpreting the FLSA exception. Nichols v. Hurley, 921 F.2d 1101, 1103 (10th Cir. 1990). In Nichols, the Tenth Circuit found that Congress intended for courts to construe the personal staff exception narrowly, i.e. that it should apply "only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of an elected official." Id. at 1104. The Tenth Circuit concluded that in determining whether the personal staff exception applies, courts should consider the following non-exhaustive list of factors:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

Id. at 1110 (quoting Teneyuca v. Bexar Cnty., 767 F.2d 148, 151 (5th Cir. 1985)).

Defendants assert that as a matter of law, a victim/witness specialist in a district attorney's

---

²(...continued)
    (ii) who –
        (I) holds a public elective office of that State, political subdivision, or agency,
        (II) *is selected by the holder of such an office to be a member of his personal staff*,
        (III) is appointed by such an officeholder to serve on a policymaking level,
        (IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or
        (V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency.

29 U.S.C. § 203(e)(2)(C) (emphasis added).

office constitutes a member of the district attorney's personal staff. Specifically, defendants assert as follows:

> The Shawnee County District Attorney is an elected official with complete discretion to select his own staff, under K.S.A. 22a-101 *et seq*. Plaintiffs plead that they were members of Mr. Taylor's staff as "Victim/Witness Specialists". As such they served at the sole discretion of the District Attorney. These statutes place the relationship between Chadwick Taylor and these plaintiffs outside the definition of employment under either Title VII or the FLSA.

<u>Motion Of Defendants Taylor And DA's Office To Dismiss</u> (Doc. #11) at 6.

As an initial matter, defendants have not shown as a matter of law that plaintiffs served at the complete discretion of Taylor. Plaintiffs allege that the DA's Office employed them as "Victim/Witness Specialists," and that defendants retaliated against them for complaining about sex discrimination and improper conduct by their supervisor. <u>Complaint</u> (Doc. #1) ¶¶ 1-2, 12, 25-26. Although the complaint could be more specific, plaintiffs have pled sufficient factual content from which the Court can reasonably infer facts which suggest that plaintiffs were not part of Taylor's personal staff. Plaintiffs' job titles alone indicate that their positions did not represent the DA in the eyes of the public. Moreover, plaintiffs allege that they worked under the control of a supervisor. Construed in a light most favorable to plaintiffs, the complaint suggests that plaintiffs did not occupy positions high within the chain of command and did not personally report only to Taylor. On this record, defendants have not shown that as a matter of law, plaintiffs occupied positions on Taylor's personal staff, <u>i.e.</u> that they occupied "highly intimate and sensitive positions of responsibility." The Court overrules defendants' motion on this ground.

### 2. **Whether The DA's Office Is Subject To Suit**

Defendants contend that the DA's Office is not a legal entity which is subject to suit. <u>See</u> <u>Motion Of Defendants Taylor And DA's Office To Dismiss</u> (Doc. #11) at 6. Under Kansas law,

absent an authorizing statute, subordinate Kansas agencies do not have the capacity to sue or be sued. See Hopkins v. Kansas, 237 Kan. 601, 606, 702 P.2d 311, 316 (1985). Plaintiffs point to no statute which authorizes suit against the DA's Office. Accordingly, the Court dismisses plaintiffs' claims against the DA Office.

### 3. Whether The Eleventh Amendment Bars Plaintiffs' Claims Against Taylor In His Official Capacity

Defendants contend that the Eleventh Amendment bars plaintiffs' claims against Taylor in his official capacity.[3] Unless Congress has abrogated states' sovereign immunity or a state has consented to suit, the Eleventh Amendment bars suits for damages against a state, its agencies and its officials acting in their official capacity. See Aaron v. Kansas, 115 F.3d 813, 814 (10th Cir. 1997). For purposes of Eleventh Amendment immunity, this Court has found that a district attorney is considered an arm of the State. See Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv., 871 F. Supp. 1331, 1347 (D. Kan. 1994). Thus, the Eleventh Amendment applies to plaintiffs' claims against Taylor in his official capacity.

As to claims under Section 1983, Section 1985 and the FLSA, Congress has not abrogated the states' sovereign immunity and Kansas has not consented to suit. See Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998) (Sections 1983 and 1985 claims); Aaron, 115 F.3d

---

[3] The Eleventh Amendment states as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

at 815-18 (FLSA wage and overtime claims).[4] Thus, the Eleventh Amendment bars plaintiffs' claims under these statutes against Taylor in his official capacity. With respect to Title VII claims, however, Congress has expressed a clear intention to abrogate the states' Eleventh Amendment immunity. See Fitzpatrick v. Bitzer, 427 U.S. 445, 449 n.2 (1976); Crumpacker v. Kan. Dep't of Human Res., 338 F.3d 1163, 1169 (10th Cir. 2003). Accordingly, the Eleventh Amendment does not bar plaintiffs' Title VII claims against Taylor in his official capacity. On this record, the Court will dismiss plaintiffs' claims under Section 1983, Section 1985 and the FLSA against Taylor in his official capacity.[5]

### 4. Whether Plaintiffs State Claims For Violation Of First Amendment Rights And For Retaliation Under Title VII

Defendants assert that plaintiffs do not state claims for violation of their First Amendment rights and for retaliation under Title VII.[6] See Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 7-9.

---

[4] In Aaron, the Tenth Circuit found that Congress did not abrogate states' sovereign immunity with regard to wage and overtime claims brought by state employees under the FLSA. The Tenth Circuit noted, however, that state employees can sue in state court for money damages under the FLSA. 115 F.3d at 817. This Court's dismissal of plaintiffs' FLSA claims is without prejudice to plaintiffs bringing suit in state court.

[5] In one sentence, defendants assert that absolute prosecutorial immunity applies to plaintiffs' claims because they relate "in part to a prosecutor's decision not to pursue criminal investigation of an alleged impropriety in his office." Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 7. Defendants provide no legal or factual analysis to support their argument and the Court does not consider it here. See, e.g., Rader v. U.S.D. 259 Wichita Pub. Sch., 844 F. Supp.2d 1206, 1211-12 (D. Kan. 2011) (court will not construct legal arguments on behalf of defendant).

[6] Defendants assert conclusively that plaintiffs do not state claims for violation of constitutional due process rights or the FLSA. See Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 7-8. Defendants, however, offer no legal or factual analysis to support the assertions and the Court does not consider them here. See, e.g., Rader, 844 F. Supp.2d at 1211-12.

### a.     **First Amendment Claims (part of Count VI)**

Defendants assert that plaintiffs do not state claims for violation of their First Amendment rights. Specifically, defendants assert that plaintiffs' complaints about management treatment of women and minority workers constitute personal grievances which are not a matter of public concern and therefore are not protected by the First Amendment. See Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 8.

For an employee to prevail against a governmental employer on a First Amendment claim of retaliation, she must show, inter alia, that her speech involved a matter of public concern. See Spencer v. Midwest City, 04-6281, 183 Fed. Appx. 798, 801 (10th Cir. June 12, 2006); Allen v. Kline, 507 F. Supp.2d 1150, 1167-68 (D. Kan. 2007) (applying Garcetti/Pickering test to determine whether district attorney employees established prima facie case of retaliation). "Matters of public concern are those of interest to the community, whether for social, political or other reasons." Dill v. Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 1998). Speech which relates to internal personnel disputes and working conditions ordinarily does not involve a matter of public concern; speech which seeks to expose improper government operations, however, or which questions the integrity of governmental officials, clearly concerns vital public interests. See Finn v. New Mexico, 249 F.3d 1241, 1247 (10th Cir. 2001) (quoting Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988)). The essential question is "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." Edwards v. City of Goldsboro, 178 F.3d 231, 247 (4th Cir. 1999) (internal quotation and citation omitted). In performing this inquiry, the Court considers the content, form and context of plaintiffs' statements. See Connick v. Myers, 461 U.S. 138, 147–48

(1983).

Plaintiffs allege that they complained that defendants were discriminating against female employees by not providing an appropriate location to breast feed or pump, and that their supervisor improperly used her position to coerce a Hispanic employee and the widow of a Hispanic murder victim to clean her home. See Complaint (Doc. #1) ¶¶ 23-26. Defendants assert that plaintiffs merely complained about personal grievances. See Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 8. They cite no authority, however, which supports this conclusion as a matter of law. See id. Accepting plaintiffs' factual allegations, the Court finds that they plausibly give rise to a claim that plaintiffs complained about matters of public concern. See, e.g., Connick, 461 U.S. at 146 (citing Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410 (1979) (clear that statements concerning school district's allegedly racially discriminatory policies involved matter of public concern). On this record, defendants have not shown that as a matter of law, plaintiffs do not state claims for violation of their First Amendment rights.

### b. Title VII Retaliation Claims (Count III)

Defendants urge the Court to dismiss plaintiffs' Title VII retaliation claims.[7] As noted, plaintiffs claim that defendants retaliated against them because they complained about sex discrimination, i.e. defendants' failure to provide women an appropriate location to breast feed or pump, and race discrimination, i.e. that their supervisor improperly used her position to coerce a Hispanic employee and the widow of a Hispanic murder victim to clean her home. Defendants assert that as a matter of law, plaintiffs could not have a had a good faith belief that said conduct violated federal law. See Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11)

---

[7] As noted, plaintiffs also assert Title VII claims for sex and associational discrimination. Defendants' motion does not meaningfully address those claims.

at 8-9. As a prerequisite to stating a Title VII retaliation claim, plaintiffs must allege facts which give rise to a plausible claim that they reasonably believed that the underlying conduct violated Title VII. See Bd. of Cnty. Comm'rs, Freemont Cnty., Colo. v. EEOC, 405 F.3d 840, 852 (10th Cir. 2005). This policy empowers employees to report what they reasonably believe is discriminatory without fear of reprisal. See id.

With respect to the breast feeding complaint, defendants assert that plaintiffs could not have had a good faith belief that a violation of federal law had occurred. Without citing any legal authority, defendants assert that the "breastfeeding complaint is not a violation of federal law." Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 8. Even if the failure to provide breast feeding accommodations does not violate Title VII,[8] it does not necessarily follow that as a matter of law, plaintiffs did not have a reasonable good-faith belief that defendants' conduct was discriminatory. See Matthew L. Williams, Let 'Em Work, Let 'Em Nurse: Accommodation For Breastfeeding Employees In West Virginia, 111 W. Va. L. Rev. 1017, 1026-29 (2009) (argument can be made that complaining about inadequate accommodations to pump is protected from Title VII retaliation). The standard has subjective and objective components, i.e. that plaintiffs subjectively believed that practice was unlawful and that the belief was objectively reasonable in light of the facts and record presented. See Espinoza v. Dep't of Corr., No. 12-1009, 509 Fed. Appx. 724, 729 (10th Cir. Feb. 4, 2013). Accepting plaintiffs' factual allegations as true, they plausibly give rise to a claim that plaintiffs had a reasonable belief that the alleged conduct was unlawful. On

---

[8] Some courts have held that Title VII does not prohibit an employer from not accommodating breast pumping in the work place. See, e.g., Martinez v. NBC, Inc., 49 F. Supp. 2d 305, 310-11 (S.D.N.Y. 1999); but see EEOC v. Houston Funding II, Ltd., 717 F.3d 425, 430 (5th Cir. 2013) (employer may not discriminate against an employee because she is lactating and expressing breast milk).

this record, defendants have not shown that as a matter of law, plaintiffs do not state a claim for retaliation based on the breast feeding complaint.

Defendants make similar arguments regarding the domestic worker complaint. They assert that no violation of federal law occurred because "[a] government worker is allowed to employ a domestic servant to clean her home, if she wishes to, without fear of the matter becoming a federal case." Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) at 9. Again, accepting plaintiffs' factual allegations as true, they plausibly give rise to a claim that plaintiffs had an objectively reasonable belief that the alleged conduct was unlawful. On this record, defendants have not shown that as a matter of law, plaintiffs do not state a claim for retaliation based on the domestic worker complaint. The Court will not dismiss plaintiffs' claims on this ground.

### 5. Whether Taylor Is Entitled To Qualified Immunity On Plaintiffs' Constitutional Claims (Count IV)

Defendants contend that in his personal capacity, Taylor is entitled to qualified immunity on the constitutional claims because plaintiffs do not allege a violation of clearly established rights. See id. at 9-10. In deciding a motion to dismiss based on qualified immunity, the Court considers whether plaintiffs have alleged facts which establish violation of a constitutional right, and whether the right at issue was clearly established at the time of the alleged misconduct. See Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011). Whether a right is "clearly established" is an objective test: The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id.

(quotation omitted). Plaintiffs bear the burden to show that the law was clearly established. See Anderson v. Worstell, No. 11-1327, 492 Fed. Appx. 913, 916 (10th Cir. Aug. 1, 2012) (citing Hilliard v. City & Cnty. of Denver, 930 F.2d 1516, 1518 (10th Cir. 1991); Dodge v. Shoemaker, 695 F. Supp.2d 1127, 1137 (D. Colo. 2010).

In response to defendants' motion, plaintiffs assert that they have articulated claims for violation of their First Amendment rights, but they do not mention claims for substantive and procedural due process or equal protection.[9] See Plaintiffs' Memorandum In Opposition To Both The Motion Dismiss Of Defendants Taylor And DA's Office And The Motion To Dismiss Of Defendants Shawnee County, Kansas And Shawnee County Board Of Commissioners, Ted Ensley, Mary M. Thomas And Shelly Buhler (Doc. #16) filed January 4, 2013 at 14. The Court interprets plaintiffs' response as abandoning those constitutional claims. With respect to the First Amendment claims, plaintiffs make no effort to demonstrate that the law was clearly established at the time of the alleged violation. See id. On this record, plaintiffs have not met their burden to show that the law was clearly established with respect to their claims for constitutional violations. Accordingly, the Court finds that Taylor is entitled to qualified immunity with respect to plaintiffs claims under Section 1983 (Count VI).

### 6. Standing

Defendants assert that plaintiffs do not have standing to assert the grievances of third parties. The Court agrees, but plaintiffs clearly assert claims on their own behalf, not on behalf of others. The Court overrules defendants' motion on this ground.

---

[9] In response to defendants' motion to dismiss, plaintiffs devote only one paragraph to qualified immunity. See Plaintiffs' Memorandum (Doc. #16) at 14.

### 7. Conspiracy Claims (Count V)

Defendants contend that plaintiffs do not state claims for conspiracy under 42 U.S.C. § 1985.[10] The Court agrees. To survive a motion to dismiss, plaintiffs must allege more than labels or conclusions. Iqbal, 556 U.S. at 678. Here, plaintiffs make only conclusory allegations that defendants acted together in a joint venture and conspired together to deny them constitutional and statutory rights. See Complaint (Doc. #1) ¶¶ 37, 82-84. They allege no supporting facts which suggest a reasonable inference that defendants conspired together to deprive them of equal protection of the laws. Accordingly, plaintiffs do not state a plausible claim for relief. See, e.g., Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (stating elements of conspiracy claim under Section 1985). The Court therefore dismisses plaintiffs' claims for conspiracy (Count V).

---

[10] Section 1985 states in part as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(c).

**B.     Motion To Dismiss By Shawnee County Defendants**

Shawnee County, Ensley, Thomas and Buhler (collectively, the "Shawnee County defendants") urge the Court to dismiss plaintiffs' claims because Shawnee County did not have authority to terminate plaintiffs' employment and plaintiffs do not allege facts to establish that the Shawnee County defendants had any involvement in the termination decision. To the extent that they apply to all defendants, the Shawnee County defendants also incorporate by reference the arguments raised by Taylor and DA's Office.

**1.     Whether Shawnee County Is Liable For Terminating Plaintiffs' Employment**

The Shawnee County defendants assert that as a matter of law, they did not have authority to terminate plaintiffs' employment.[11] In Allen v. Kline, 507 F. Supp.2d 1150, 1163 (D. Kan. 2007), this Court found that under Kansas law, a district attorney has complete authority to appoint and remove personnel. In Allen, attorneys and a chief investigator sued the Johnson County District Attorney for terminating their employment in violation of their constitutional rights to due process, free association and free speech. In determining whether defendant was entitled to qualified immunity on the due process claim, the Court examined whether Johnson County policies created an implied contract with plaintiffs for continued employment. The Court found that Kansas law was unclear as to whether the District Attorney had sole authority to terminate employees. See id. at 1161. The Court found that although the county pays the salaries of the district attorney and his staff, the law indicates that the district attorney and his agents are employees of the state for purposes of the Kansas Tort Claims Act and Eleventh Amendment immunity. Id. For other

---

[11]     Although defendants do not specify, this argument apparently relates to plaintiffs' claims for violation of Title VII and constitutional rights, but not to claims for unpaid overtime compensation under the FLSA.

purposes such as workers compensation and the Kansas retirement system, however, district attorney employees are considered employees of the county. See id.  Looking to K.S.A. § 22a-106, which grants district attorneys power to appoint personnel but is silent as to whether district attorneys have authority to discharge employees, the Court found that by implication a district has authority to discharge personnel and that the county lacks authority to override the district attorney's decision. Id. at 1161-63.

Plaintiffs argue that Allen is distinguishable because (1) here plaintiffs are lower-level employees and (2) plaintiffs here allege a joint-employer relationship while the plaintiffs in Allen did not.  The Court's analysis in Allen does not turn on the level of employees involved.  Moreover, the Court in Allen clearly considered the inter-relatedness between the county and the district attorney.  Plaintiffs' conclusory allegation of "joint employment" does not change the result. Consistent with Allen, the Court finds that as a matter of law, the Shawnee County defendants did not have authority to terminate plaintiffs' employment.  Accordingly, the Court dismisses plaintiffs' claims against the Shawnee County defendants for violation of Title VII and for violation of constitutional rights based on wrongful termination of employment (Counts I, II, III and IV).

### 2. Arguments Raised By Taylor And The DA's Office

Regarding plaintiffs' conspiracy claims, the arguments raised by Taylor and the DA's Office apply equally to the Shawnee County defendants.  Accordingly, for reasons stated, the Court dismisses plaintiffs' claims for conspiracy against the Shawnee County defendants (Count V).

**IT IS THEREFORE ORDERED** that the Motion Of Defendants Taylor And DA's Office To Dismiss (Doc. #11) filed November 13, 2012 be and hereby is **SUSTAINED in part**.  The Court dismisses the following claims: (1) against the Office of the District Attorney, 3rd Judicial District

of Kansas, all claims (Counts I-VI); (2) against Chadwick J. Taylor in his official capacity, claims under Section 1983, Section 1985 and the FLSA (Counts IV-VI); (3) against Chadwick J. Taylor in his personal capacity, claims under Section 1983 (Count IV). Defendants' motion is otherwise overruled.

**IT IS FURTHER ORDERED** that the <u>Motion To Dismiss Of Defendants, Shawnee County, Kansas And Shawnee County Board Of Commissioners, Ted Ensley, Mary M. Thomas And Shelly Buhler</u> (Doc. #13) filed November 27, 2012 be and hereby is **SUSTAINED in part**. Against Shawnee County, Kansas, Ted Ensley, Mary M. Thomas and Shelly Buhler, in their official and individual capacities, the Court hereby dismisses the following claims: (1) claims under Title VII (Counts I-III); (2) claims under Section 1983 (Count IV); and (3) claims under Section 1985 (Count V).

**The following claims remain in the case:**

Against Chadwick J. Taylor in his official capacity, claims under Title VII (Counts I-III).

Against Chadwick J. Taylor in his personal capacity, claims under Title VII (Counts I-III) and denial of overtime wages under the FLSA (Count VI).

Against Shawnee County, Kansas, Ted Ensley, Mary M. Thomas and Shelly Buhler in their official and individual capacities, denial of overtime wages under the FLSA (Count VI).

It appears that plaintiffs cannot impose Title VII liability against Taylor in his individual capacity. See <u>Haynes v. Williams</u>, 88 F.3d 898, 901 (10th Cir. 1996) (Title VII precludes personal capacity suits against individuals who do not otherwise qualify as employers under statutory definition). **IT IS THEREFORE ORDERED** that on or before **October 15, 2013**, plaintiffs shall show cause in writing why the Court should not dismiss the Title VII claims against Taylor in his

individual capacity.

Dated this 30th day of September, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge