## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KRYSTAL L. BOXUM-DEBOLT and** | ) | |
| **LISA ANNE MOORE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 12-2641-KHV** |
| **CHADWICK J. TAYLOR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Krystal L. Boxum-Debolt and Lisa Anne Moore bring suit against Shawnee County, Kansas and Shawnee County Board of Commissioners Ted Ensley, Mary M. Thomas and Shelly Buhler, in their official and individual capacities (collectively, "Shawnee County defendants").[1] Specifically, plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for willful failure to pay overtime wages and failure to keep records of hours worked.[2] See Pretrial Order (Doc. #80) at 8-9. This matter is before the Court on Defendants' Shawnee County,

---

[1] Plaintiffs also sue Chadwick J. Taylor in his official capacity as District Attorney ("DA") for the Third Judicial District of the State of Kansas for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. See Pretrial Order (Doc. #80) filed February 9, 2016.

[2] Plaintiffs originally asserted claims against the Shawnee County defendants as follows: (1) under Title VII, for gender discrimination, associational discrimination and retaliation; (2) under 42 U.S.C. §§ 1983 and 1985, for violation of constitutional rights to substantive and procedural due process, freedom of speech and equal protection and conspiracy to violate those rights; and (3) under the FLSA, willful denial of overtime wages. See Complaint (Doc. #1) filed October 1, 2012.

On September 30, 2013, the Court dismissed claims against the Shawnee County defendants for violation of First Amendment rights, conspiracy under Section 1985, Title VII and violation of constitutional rights based on wrongful termination of employment. See Memorandum And Order (Doc. #24) at 10-17.

Kansas And Shawnee County Board Of Commissioners, Ted Ensley, Mary M. Thomas And Shelly Buhler Motion For Summary Judgment (Doc. #81) filed February 26, 2016.  For reasons stated below, the Court overrules the motion.

## I.    Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may

grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  See Liberty Lobby, 477 U.S. at 250-51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## II.    Facts

The following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiffs.[3]

K.S.A. § 22a-106(a) requires county commissioners to "determine and allow such reasonable sums from funds of the county for the compensation of [DA employees] and for other expenses of [the DA office] as may be necessary to carry out the function of such office." K.S.A. § 22a-106(a).[4]

---

[3]    The Court includes only those facts which are material to defendants' motion and disregards any facts which are not supported by record citations.

[4]    Section 22a-106(a) states as follows:

(a) Within the limits of appropriations therefor, the district attorney shall appoint such assistant district attorneys, deputy district attorneys and other stenographic, investigative and clerical hire as may be necessary to carry out the functions of the district attorney's office in such judicial district, and he shall determine the annual compensation of each assistant district attorney and other persons appointed pursuant to this subsection. The county commissioners shall determine and allow such reasonable sums from funds of the county for the compensation of assistants, deputies and other stenographic, investigative and clerical hire and for other expenses of such office as may be necessary to carry out the function of such office.

(continued...)

Within the limits of funds appropriated by the County, Taylor has sole discretion to hire and fire employees in the DA office. <u>See</u> K.S.A. § 22a-106(a).

Under K.S.A. § 22a-106(c), Shawnee County Commissioners must provide suitable office space for the DA. <u>See</u> K.S.A. § 22a-106(c).[5] Through the Shawnee County sheriff's department, the County provides DA employees key cards so that they can enter and exit the Shawnee County Courthouse.

Taylor and his management staff developed policy for the DA office. They produced and distributed to DA employees an office policy manual. The manual contains an organizational chart for the reporting structure within the office. The chart does not list any of the Shawnee County defendants. With regard to working hours, the manual states as follows:

> <u>Office Hours</u>. The [DA Office] is open for business Monday through Friday from 8:00am to 5:00pm with a one (1) hour lunch break. All full-time employees are expected to work these hours unless your supervisor and the [DA] approve an alternate work schedule.

Exhibit 2 to Spradling Depo., Exhibit 4 to <u>Memorandum In Support Of Defendants' Shawnee County, Kansas And Shawnee County Board Of Commissioners, Ted Ensley, Mary M. Thomas And Shelly Buhler Motion For Summary Judgment</u> ("<u>Defendants' Memorandum</u>") (Doc. #82) filed February 26, 2016.

---

[4](...continued)
K.S.A. § 22a-106(a).

[5]     Section 22a-106(c) states as follows:

(c) The board of county commissioners of each county contained in judicial districts 3, 10, 18 and 29 shall provide suitable office space within such county for the district attorney, his assistants, deputies, office personnel and equipment.

K.S.A. § 22a-106(c).

The County and DA share a computerized payroll system called "IFAS."[6]  The County encourages the DA to use its payroll system because it is an efficient way to meet its statutory obligation to provide reasonable sums to fund operations of the DA office.  The County provides payroll services for the DA.  In other words, the county payroll system includes DA employees.  The DA follows County policies and procedures regarding sick leave and vacation time.  The County maintains records for tracking accrued sick and vacation time of DA employees.  The DA office processes requests for FMLA leave, but the County tracks the leave for payroll purposes.

DA employees sign up for health insurance through the County.  In addition, on behalf of DA employees, the County provides worker's compensation benefits and makes contributions to the Kansas Public Employee Retirement System ("KPERS").  For purposes of workers' compensation, the County is the "employer" of DA staff.

For each pay period, Taylor's executive assistant keeps track of hours worked by DA employees.[7]  Based on that information, the County issues paychecks for DA staff.  If the DA office enters overtime hours for a nonexempt employee, the IFAS system would automatically generate a paycheck that includes overtime pay of one-and-a-half times the ordinary pay for time worked in excess of 40 hours in a workweek.

The County human resources department regularly provides guidance to County departments regarding how to input hours in the IFAS system.  The human resources department does not provide such guidance to the DA office; if DA staff contacted human resources with a question,

---

[6]     The record does not disclose what "IFAS" stands for.

[7]     Although the record is not clear, it appears that Taylor's assistant enters into IFAS hours worked by DA employees.

however, County staff would assist him or her.

To update IFAS with regard to hiring, rate of pay and termination decisions involving DA staff, Taylor provides the County change-in-status forms entitled "Shawnee County Personnel Status Change."  At the bottom of the form are two signature lines to show who "authorized" the change.  Plaintiffs' Exhibits 5 and 6.  The County human resources office retains in its files completed change-in-status forms for DA employees.  Other than change-in-status forms and payroll files, the County does not retain employment records for DA personnel.  The DA does not share records regarding employee performance with the County.

Boxum and Moore worked in the victim/witness unit of the DA office.  Taylor and other DA employees interviewed and hired Boxum.  DA employee Heather Whitton interviewed Moore.[8] Whitton directly supervised Boxum and Moore.  She and other DA employees assigned them work. Taylor had sole authority to impose employment discipline on them.

Boxum and Moore took oaths of office as Shawnee County employees.  During their employment, the County paid health and life insurance and made contributions to KPERS for them. Boxum and Moore elected to participate in the Shawnee County cafeteria benefit plan.  See Plaintiffs' Exhibit 11.  The election form states as follows:

> I understand my employer, Shawnee County, is providing $480.00 per month for the purchase of qualified benefits as part of the Shawnee County Cafeteria Benefit Plan. I hereby authorize and direct my employer to reduce my salary in the amount(s) shown. * * *

Id.  The County issued plaintiffs W-2 forms.  The W-2 forms list their "employer" as "Shawnee County, Office of the County Clerk."  See Plaintiffs' Exhibit 16.

---

[8]      The summary judgment facts do not indicate who hired Moore or the dates of hire for Boxum or Moore.

-6-

For employment changes regarding the hiring, pay and termination of Boxum and Moore, Taylor signed and submitted change-in-status forms.  The County human resources director authorized the changes with his signature.  See Plaintiffs' Exhibits 5 and 6.

Boxum and Moore could not possibly complete their job responsibilities without working more than 40 hours per week.  DA policy required them to return telephone messages within 24 hours.  To meet the requirement, they frequently had to return calls during lunch and evening hours. In addition, the DA expected them to stay with victims and witnesses during trials and visits to the DA office, which often required them to work past 5:00 p.m.  The DA issued Blackberries to Boxum and Moore and expected them to answer calls from victims or witnesses regardless of the number of hours that they had already worked.  These calls often occurred outside normal working hours. Also, at the end of each day, Boxum and Moore received a list of cases docketed for the following day.  Their duties required them to contact victims and witnesses that evening to determine whether they would be in court the next day and whether they would testify.

On multiple occasions, Boxum asked Whitton for authority to work overtime in order to complete her work.  The record does not indicate Whitton's response.  Boxum asked her in casual conversation; she never made a formal request or filled out a written form.  Whitton told Moore that she could keep track of her overtime and take compensatory time off.  At some point, Moore realized that there was no time available to take comp time.

Working overtime was a regular occurrence in the DA office.  Boxum understood that under DA policy, before an employee could receive overtime pay, she must obtain prior authorization from Taylor.  Boxum received pay checks for the "standard approval" of 40 hours even though it was "an understood rule that you just worked til you got it done."  Boxum Depo. at 119:18-25, Plaintiffs'

Exhibit 9.  Neither the DA nor the County ever asked Boxum and Moore to review or approve time sheets; they received pay for 40 hours each week regardless of the number of hours that they actually worked.

The DA employed Boxum with grant funding.  Boxum also worked on projects outside the scope of the grant.  When she worked on grant-funded projects, she completed a form regarding her time worked.  Boxum did not keep track of her time on non-grant projects.  During the week of January 25 to 29, 2010, Boxum recorded 44.5 hours on grant-funded projects.  During the week of April 19 to 23, 2010, Boxum recorded 41.5 hours on grant-funded projects.

The DA utilizes software called "Justware" to store information on criminal cases.  When Boxum and Moore put notes into Justware, it saved a time stamp that showed when they entered the note.

Boxum and Moore estimate that they worked an average of 10 hours overtime per week.  Other than Justware or grant-tracking forms, Boxum retained no personal records or documentation showing time that she worked outside of normal working hours.  When Moore worked late, she often recorded her time in a planner that she kept in her desk.  When Taylor forced her to resign, the planner was in her desk.  She has not seen it since.

On July 13, 2010, Taylor placed Moore on medical leave and sent her home pending a doctor's clearance.  Before doing so, Taylor contacted the County human resources department to discuss her condition and whether he should place her on leave.  Thereafter, Taylor conducted a purported "investigation" into Boxum and Moore and forced them to resign or be fired.

### III.    Analysis

Against the Shawnee County defendants, plaintiffs assert claims under the FLSA for willful

-8-

failure to pay overtime wages and failure to keep records of hours worked. Defendants seek summary judgment on all claims. Specifically, defendants assert that for purposes of the FLSA (1) the Shawnee County defendants did not employ plaintiffs; and (2) plaintiffs cannot prove the merits of their claims.

### A.     Whether Shawnee County Employed Plaintiffs

Defendants assert that as a matter of law, for purposes of FLSA liability, the County did not employ plaintiffs. The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute defines an "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA defines the term "employ" expansively to mean to "suffer or permit to work." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)). The Supreme Court has emphasized that the "striking breadth" of this latter definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Id. (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)).

Defendants assert that as a matter of law, DA staff are employees of the state for "all purposes" except workers compensation and KPERS. Defendants' Memorandum (Doc. #82) at 13-14. The authority which they cite, Allen v. Kline, 507 F. Supp.2d 1150, 1161 (D. Kan. 2007), does not support their assertion. In Allen, the Court determined whether Johnson County had authority to create an implied contract of employment with DA employees. See Allen, 507 F. Supp.2d at 1160-61. The Court found that Kansas law was unclear on the matter. On one hand, Kansas law provides that the DA is an officer of the state and that for purposes of the Kansas Tort Claims Act

("KTCA"), K.S.A. § 75.6101, et seq., the DA and his agents are employees of the state.  Id. (citations omitted).  For other purposes including workers compensation and KPERS, however, it considers DA employees to be employees of the county. See id. (citing Stuart v. Douglas Cty., Kan., 21 Kan. App.2d 784, 788, 907 P.2d 919, 922 (1995) (workers compensation); Kan. Att'y Gen. Op. No. 80-26 (January 30, 1980) (Stephan) (KPERS)).  Contrary to defendants' assertion, Allen did not hold that DA staff are considered state employees for all purposes except workers compensation and KPERS.  As discussed, the Court found that DA staff are considered employees of the state for some purposes (including the KTCA) and employees of the county for other purposes (including workers compensation and KPERS).  See Allen, 507 F. Supp.2d at 1161.  On this record, defendants have not shown that as a matter of law, the County did not employ plaintiffs for purposes of FLSA liability.[9]  Accordingly, defendants are not entitled to summary judgment on this ground.

Defendants assert that even if the County can be liable to DA employees under the FLSA, they are not liable because plaintiffs cannot show that the County exercised substantial control over the terms and conditions of their work.  See Defendants' Memorandum at 14.  Specifically, defendants assert that as a matter of law, under the "economic realities test," the County did not employ plaintiffs.  Id. at 14-22.  The Tenth Circuit has applied the economic realities test to determine whether an individual was an employee or independent contractor for purposes of FLSA liability.  See Baker v. Flint Eng'g & Constr. Co., 137 F.3d 136, 1440-41 (10th Cir. 1998).  As a preliminary matter, defendants have not shown that the test applies here, where plaintiffs are considered employees of the state for some purposes and employees of the county for other

_____

[9]   At this juncture, the Court does not purport to comprehensively analyze the law in this area.  It addresses only the arguments which the Shawnee County defendants have raised on summary judgment and reserves further rulings for trial.

purposes. Moreover, construed in the light most favorable to plaintiffs, even if the economic realities test does apply, defendants have not shown that as a matter of law the County did not employ plaintiffs.

The economic reality test looks to whether the alleged employer (1) has power to hire and fire employees; (2) supervises and controls employee work schedules or conditions of employment; (3) determines the rate and method of payment; and (4) maintains employment records. Id. at 1440. The test is based on the totality of the circumstances; no one factor is dispositive. Saavedra v. Lowe's Home Ctrs., Inc., 748 F. Supp.2d 1273, 1293 (D.N.M. 2010) (examining whether supervisors may be liable as employers under similar provisions of FMLA). Moreover, for purposes of FLSA liability, more than one entity can "employ" plaintiffs. See, e.g., Falk v. Brennan, 414 U.S. 190, 195 (1973). In applying the factors, the Court is also mindful of the expansive definition of the term "employ" under the FLSA. See, e.g., Nationwide, 503 U.S. at 326.

Regarding the first factor, i.e. whether the alleged employer has power to hire and fire employees, the DA clearly had power to hire and fire plaintiffs. See Allen, 507 F. Supp.2d at 1160-63. This authority, however, was subject to the limits of funds appropriated by the County. Although the County did not have authority to directly hire and fire DA employees, the record supports an inference that based on its authority over budget appropriations, it had indirect control over hiring decisions. Moreover, the County human resources director signed or "authorized" all personnel status changes – including hiring and termination decisions – which Taylor submitted. This factor weighs in favor of finding that the County employed plaintiffs for FLSA purposes.

Regarding the second factor, i.e. whether the alleged employer supervises and controls employee work schedules or conditions of employment, the record contains no information which

suggests that the County supervised or controlled plaintiffs' work schedules.  On the other hand, since the County would be liable for any workers compensation claims, it presumably could exercise control over at least some conditions of employment of DA employees.  Construing the record in the light most favorable to plaintiffs, this factor weighs in favor of finding that the County employed plaintiffs for FLSA purposes.

Regarding the third factor, i.e. whether the alleged employer determines the rate and method of payment, the County handled payroll for DA personnel and obviously controlled the method of payment.  Moreover, the County human resources director "authorized" all personnel status changes – including rate of pay decisions – submitted by Taylor.  Construing the record in the light most favorable to plaintiffs, this factor weighs in favor of finding that the County employed plaintiffs for FLSA purposes.

Regarding the fourth factor, i.e. whether the alleged employer maintains employment records, the County maintained at least some employment records for DA personnel.  Specifically, the County retained change-in-status forms and payroll files.  Construing the record in the light most favorable to plaintiffs, this factor weighs in favor of finding that the County employed plaintiffs for FLSA purposes.

In addition, the Court notes that plaintiffs took oaths of office as Shawnee County employees and that on their behalf, the County provided health and life insurance and cafeteria benefit plans, made contributions to KPERS and issued W-2 forms which listed the County as their "employer." On this record, a reasonable jury could conclude that the County employed plaintiffs for purposes of FLSA liability.  Accordingly, defendants are not entitled to summary judgment on this ground.

### B.      Whether Plaintiffs Can Prove Merits Of Claims

Defendants assert that plaintiffs cannot prevail on the merits of their claims.  The FLSA requires employers to compensate employees for time over 40 hours per week at a rate of one- and-a-half times the regular rate at which they are employed.  <u>See</u> 29 U.S.C. § 207(a)(1).[10]  To prove a claim for overtime compensation, plaintiffs must show that (1) they actually worked overtime; (2) the amount of overtime was shown by justifiable and reasonable inference; (3) the employer had actual or constructive knowledge of the overtime; and (4) the employer failed to pay them for the overtime.  <u>See</u> <u>Slattery v. HCA Wesley Rehab. Hosp., Inc.</u>, 83 F. Supp.2d 1224, 1230 (D. Kan. 2000).  Defendants assert that plaintiffs cannot show the second or third elements, <u>i.e.</u> the amount of overtime that plaintiffs worked or that defendants had actual or constructive knowledge of that overtime.

### 1.      Proof Of Overtime

Defendants asset that plaintiffs cannot prove the second element, <u>i.e.</u> they cannot show by justifiable and reasonable inference the amount of overtime which they worked. Defendants assert that plaintiffs provide only "guesses" and "estimates" of the number of overtime hours.  <u>Defendants' Memorandum</u> (Doc. #82) at 23-23.  While plaintiffs bear the burden to show that they performed work for which they were not properly compensated, employers have a duty to keep accurate records.  <u>Baker v. Barnard Constr. Co.</u>, 146 F.3d 1214, 1220 (10th Cir. 1998).  If plaintiffs show the amount and extent of their work by just and reasonable inference, the burden

---

[10]      Section 207(a)(1) states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

shifts to the employer to produce evidence of the precise amount of work performed or otherwise negate the reasonableness of the inference drawn from plaintiffs' evidence.  See id.  Here, plaintiffs provide sworn testimony that they worked an average of ten hours of overtime each week. Construed in a light most favorable to plaintiffs, the record supports a just and reasonable inference that they performed such work.  See, e.g., Donovan v. Simmons Petroleum Corp., 725 F.2d 83, 86 (10th Cir. 1983); Aponte v. Modern Furniture Manuf. Co., No. 14-CV-4813, 2016 WL 5372799, at *13 (E.D.N.Y. Sept. 26, 2016).  Defendants assert that they recorded and preserved official time data in IFAS which shows that plaintiffs worked 40 hours per week.  See Defendants' Memorandum (Doc. #82) at 26.  Whether this evidence sufficiently negates the inference drawn from plaintiffs' evidence is a matter for the jury.  Defendants are not entitled to summary judgment on this ground.

### 2.      Proof That Defendants Had Knowledge Of Overtime Work

Defendants assert that plaintiffs cannot show the third element, i.e. that the County had actual or constructive knowledge of their overtime work.  Specifically, defendants assert that plaintiffs have produced no evidence that they informed the County of their overtime work.  See Defendants' Memorandum (Doc. #82) at 26-27.  Defendants do not address whether they had constructive knowledge of the overtime.  If through the exercise of reasonable diligence the County should have known that plaintiffs were working more than their scheduled hours, a jury could find that defendants had constructive knowledge of the overtime work.  See, e.g., Hertz v. Woodbury Cty., Iowa, 566 F.3d 775, 781 (8th Cir. 2009).  Here, the record contains no evidence that the County had established procedures for employees to submit overtime claims.  Cf. id. at 782; Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 390 (6th Cir. 2016) (court could not conclude as matter of law that employer had established reasonable process for employee to report

-14-

uncompensated work time).  Defendants are not entitled to summary judgment on this ground.

**IT IS THEREFORE ORDERED** that Defendants' Shawnee County, Kansas And Shawnee County Board Of Commissioners, Ted Ensley, Mary M. Thomas And Shelly Buhler Motion For Summary Judgment (Doc. #81) filed February 26, 2016 be and hereby is **OVERRULED**.

Dated this 1st day of December, 2016 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge